REGAN, Judge.
Plaintiff, Sybil Realty, Inc., instituted this suit against the defendants, Maryland Casualty Company, Gulf Union Casualty Company, Fidelity & Guaranty Insurance Underwriters and American Employers Insurance Company, co-insurers of the plaintiff’s property, endeavoring to recover the sum of $1,062.37, representing lightning damages incurred by air-conditioning equipment which serviced its restaurant located in 3510 Airline Highway. The plaintiff also requested the imposition of penalties and attorney’s fees.
The defendants’ answer simply consisted of a general denial.
From a judgment dismissing the plaintiff’s suit, it has prosecuted this appeal.
The record reveals that the plaintiff’s air-conditioning equipment was housed in a small room located behind and attached to the restaurant. Two ten-ton units serviced the Tropic Palms Motel as well as the restaurant and were equipped with standard safety devices [1] installed by the manufacturer.
On July 28, 1958, at about 4:00 p. m. the compressor and thermo-box of one of the aforementioned units were greatly damaged by an electrical force, the nature of which forms the subject matter of this litigation.
Albert Franatovich, an air-conditioning expert who had, in May of 1958 installed a new chiller and compressor in the damaged unit and who was under contract to service the equipment monthly, was requested to examine the impaired equipment and ascertain the cause thereof.
He ultimately appeared on behalf of the plaintiff and testified that all of the safety devices were intact and in good working order, including the fuses, which had not been blown. The only plausable explanation which he could offer for the damage was that lightning had struck the equipment since the eharacteristics of damage thereto were comparable to damages incurred by other units which he had both examined and repaired following thunderstorms.
He very pertinently observed that another unit had been struck by lightning on the same afternoon at the Rainbow Inn on Jefferson Highway, an establishment located in the general vicinity of the plaintiff’s restaurant. He also made the necessary repairs to that unit, which were paid for by the insurer thereof.
In any event, Franatovich repaired the plaintiff’s air-conditioning equipment a few days thereafter and is awaiting payment therefor, pending judicial determination of the cause of the damage.
Philip Thompson, another air-conditioning expert, appeared on behalf of the plaintiff and expressed the opinion that the damage could not have been caused by man-made electrical current flowing into the equipment since no voltage supplied by the Louisiana Power and Light Company was great enough to melt the wires as had occurred in this instance. He fully corroborated Franatovich’s testimony and emphasized, with significance, that the protec *479 tive devices had not been disturbed. Consequently he concluded that lightning had been the causative factor of the damage.
Louis J. Lambert, an electrician, also appeared on behalf of the plaintiff and related that he had replaced the motor wiring of the exhaust fan located in the small window of the room housing the air-conditioning equipment. Unfortunately he was unable to furnish the exact date he had been requested to perform this work. However, the plaintiff did receive from him an invoice dated September 22, 1958, wherein he stated that “hi-voltage lightning” had been the cause of the damage to the fan.
In the course of the trial hereof he explained that he had deduced this from the fact that the fan was relatively new, having been installed earlier by him, and ordinarily it would not burn out in such a short period of time. Furthermore, there was a “splattered copper-like” substance on the inside of the motor which was indicative of the entry therein of an unusually high voltage.
Denis R. Aucoin, Jr., an electrician who was in August, 1958, superintendent of Brothers Electric, the company which had performed the electrical repairs to the damaged unit, also appeared on behalf of the plaintiff. In substance he corroborated the testimony of Franatovich and Thompson in that some unusual external force had caused the damage since the safety devices were intact. He could not say unequivocally that a direct strike by lightning had caused the damage since he did not see it occur, but concluded that “ * * * it was caused by something that wasn’t normal.”
In an effort to establish the fact that lightning occurred on July 28, 1958, the plaintiff introduced the testimony of Dominic Brisolara and a climatological report from the United States Weather Bureau.
Brisolara, owner of the Rainbow Inn situated in 1125 Jefferson Highway, related that air-conditioning equipment located in his establishment had been damaged on July 28, 1958, that Franatovich had repaired it, and that the charges therefor had been paid by an insurance company.
The weather report emanating from the U. S. Weather Bureau, located in the Post Office Building, for July 28, 1958, the day the air-conditioning equipment was damaged, reflects that thunderstorms occurred in this area. On the other hand, the report from the U. S. Weather Bureau, located at the Moisant International Airport, does not reflect the occurrence of thunderstorm activity on July 28, 1958 in that area. The plaintiff’s restaurant is located between these two weather stations.
Charles W. Fox, Jr., president of Fox Engineering, Inc., a business which is engaged in gas engineering, heating and air-conditioning, appeared as an expert on behalf of the defendants. Although Fox had devoted four years of study to mechanical-electrical engineering at Tulane University, 'he is not registered as an electrical engineer by the state of Louisiana. He was accepted by the court, however, as an expert mechanical engineer.
Fox conducted two inspections of the plaintiff’s premises on March 31, 1959 and April 28, 1959, which significantly occurred about eight and nine months respectively after the equipment had been damaged and repaired. It will be recalled that two ten-ton units were housed in the rear of plaintiff’s restaurant. Fox examined the undamaged unit in order to deduce therefrom what may have been the cause of the damage to the unit which forms the subject matter of this litigation.
He laboriously related that there was a section of uninsulated freon pipe above the compressor' of the undamaged unit and from which condensation was dripping. An effort had been made to prevent this moisture from falling onto the electrical components of the unit by inserting armoflex under the pipe so that it could serve as a gutter. A photograph introduced into evidence depicted this condition and it also *480 reflected that the top of the terminal box had rusted.
Fox then expressed the very nebulous opinion that the same conditions could have existed in relation to the damaged unit, and that the condensation had saturated the motor terminal box and thus caused a short-circuit or electrical failure. This could have occurred, he said, without bringing into action any of the safety devices. He therefore reasoned that lightning had not caused the damage. However, he very cautiously emphasized that it was possible that lightning did cause the damage.
Predicated upon the foregoing testimony, the trial judge found as a fact the plaintiff had failed to establish by a preponderance of the evidence adduced herein that the damage to its air-conditioning unit had been caused by a bolt of lightning.
The only question posed for our consideration by this appeal is whether that finding of fact by the trial judge is so erroneous and unsupported by the evidence inscribed in the record as to warrant a reversal by us.
We have carefully reviewed the transcript and we are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony. Suffice it to say that a careful examination of all of the evidence inscribed in the record convinces us that the conclusion reached by the trial court was erroneous.
In our opinion, the foregoing testimony emanating from Franatovic'h, Thompson, Lambert and Aucoin preponderates to the effect that lightning was the cause of the damage to the air-conditioning equipment. On the other hand, the defendants failed to rebut the validity of their testimony by the introduction of the testimony of Fox. He examined the equipment about eight months after the damage occurred and was repaired, and his nebulous opinion with respect to the cause thereof was pure unadulterated conjecture and speculation as is evidenced by a summary of his testimony set forth hereinabove.
We believe that the plaintiff has proven its case by a preponderance of the evidence and with that certainty required by law and is therefore entitled to judgment against the defendants Maryland Casualty Company and American Employers Insurance Company.
In our opinion the contracts of insurance issued to the plaintiff by the other two defendants, that is Gulf Union Casualty Company and Fidelity & Guaranty Insurance Underwriters did not cover lightning damage to the air-conditioning equipment located in the restaurant but were only applicable to the motel which was operating in conjunction with the restaurant, and therefore as to these defendants, the suit was properly dismissed.
We find no merit in the plaintiff’s request for penalties and attorney’s fees since the record fails to reflect any arbitrary action on the part of the defendants in processing this claim which would warrant the imposition thereof.
For the reasons assigned, the judgment appealed from is reversed insofar as it dismisses the plaintiff’s suit against Maryland Casualty and American Employers Insurance Company and it is now ordered that there be judgment herein in favor of the plaintiff Sybil Realty, Inc. and against the defendants Maryland Casualty Company and American Employers Insurance Company in the amount of $1,062.37 and the judgment dismissing the plaintiff’s suit against the defendants Gulf Union Casualty Company and Fidelity & Guaranty Insurance Underwriters is affirmed.
The defendants Maryland Casualty Company and American Employers Insurance Company are to pay all costs.
Reversed in part, affirmed in part.

. They were fuses, the thermo elements in the electrical starter, and the “klixon” switch located on the compressor. These safety devices were intact and functioned after the damage occurred.